IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL WEBER, et al., | No. C 04-5161 FMS |
| Plaintiffs, | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| BILL LOCKYER, et al., | |
| Defendants. / | |

I. INTRODUCTION

    This action is a class action lawsuit challenging the constitutionality of Proposition 69, passed into law by California voters on November 2, 2004. Plaintiffs claim that the portions of the new law that require DNA testing of people who are arrested for but not convicted of a crime and people that were convicted of a felony in the past but are no longer subject to supervision by the criminal justice system violate the Fourth and Fourteenth Amendments. Defendants, including the Attorney General of California and other California law enforcement officials, move to dismiss the action on the basis that the plaintiffs lack standing and their challenge is not ripe for adjudication. The Court issued a Tentative Order granting defendants' Motion to Dismiss on April 12, 2005, and heard oral argument in April 14, 2005. For the following reasons, the Court now issues this final Order GRANTING defendants' Motion to Dismiss.

## II. BACKGROUND

California voters passed Proposition 69, entitled the DNA Fingerprint, Unsolved Crime and Innocence Protection Act, on November 2, 2004. Complaint, Ex. A. Proposition 69 amended the California Penal Code, Sections 295 *et seq.* to expand the group of people subject to mandatory DNA testing and inclusion in California's DNA Database and Data Bank Program. Previously, persons convicted of certain sex crimes and other violent crimes were subject to mandatory DNA testing. Effective November 3, 2004, persons convicted of any felony offense and persons arrested for or charged with murder, voluntary manslaughter and certain sex crimes became subject to mandatory DNA testing. Effective January 1, 2009, adults arrested for or charged with any felony offense become subject to mandatory DNA testing (the "2009 arrestee provision"). Under the new law, DNA samples are generally taken by buccal cheek swab.

Plaintiffs filed their complaint challenging the constitutionality of certain provisions of Proposition 69 on December 7, 2004. Plaintiffs attack the provisions of Proposition 69 that allegedly subject all adult felony arrestees and former convicted felons to compulsory DNA testing. Plaintiffs contend that subjecting people who have not been convicted of a crime and people who have been previously convicted but who are no longer subject to the criminal justice system to compulsory DNA testing violates their rights under the Fourth and Fourteenth Amendments.

Plaintiffs include both individuals and organizations. The named individual plaintiffs fall into two categories. The first category, which includes plaintiffs Weber, Ware, Delucci-Youngberg, Blair, Rivas, and Craig, were arrested for or charged with a felony on or before November 3, 2004 but were not convicted of a felony (the "Arrestee Class").[1] The second category includes plaintiffs Walker and Pruitt, both of whom were convicted of or pled guilty to a felony before the new law took effect, completed their sentences, and are no longer subject to the criminal justice system (the "Formerly Convicted Persons Class"). The two organizational plaintiffs are Americans for Safe Access, of which plaintiff Blair is a member, and All of Us or None, of which individual plaintiff Walker is a member. Plaintiffs seek declaratory and injunctive relief providing that Proposition 69

---

[1] An additional plaintiff, Lam, could also be considered a member of this class at the time plaintiffs filed their complaint, but has since pled guilty to a felony and is thus subject to Proposition 69 under a provision not at issue in this litigation. Opp'n at 3.

2

is unconstitutional as applied to members of the Arrestee Class and the Formerly Convicted Persons Class, and enjoining defendants from testing or assisting others in testing DNA from any member of the Arrestee Class and the Formerly Convicted Persons Class.

Defendants include Bill Lockyer, Attorney General of the State of California; Eva Steinberger, Assistant Bureau Chief for DNA Programs of the California Department of Justice ("DOJ") and Lance Gima, Chief of the Bureau of Forensic Services of the DOJ (the "State Defendants"). Defendants also include the Sheriffs of the Counties of Alameda, Contra Costa, Sacramento, Shasta, and Sacramento, and the Chiefs of Police of the Cities of Sacramento, Emeryville and San Francisco. All defendants are sued in their official capacity. The State Defendants moved to dismiss plaintiff's action for lack of standing and ripeness on February 4, 2005. All other defendants have joined in the State Defendants' Motion to Dismiss.

In their moving papers, defendants bring to the Court's attention an Information Bulletin issued by the California Department of Justice on January 11, 2005 with the subject "Proposition 60-DNA Fingerprint, Unsolved Crime and Innocence protection Act, Effective November 23, 2004" (the "Bulletin"). Defendants state that although the Bulletin has not yet issued in its final form, it has been distributed to and is being used in training sessions for California law enforcement authorities. Motion to Dismiss at 5. The Bulletin states that "Proposition 69 does not authorize DNA sample collection for any arrests that occurred before November 3, 2004, nor does it authorize DNA sample collection upon arrest based on *prior* felony convictions or adjudications of record. Likewise, the broader collection of felony arrestee samples from adults that will begin on January 1, 2009, is not retroactive to arrests that took place before January 1, 2009."

## III. DISCUSSION

Defendants state that plaintiffs are not, and will not be, subject to compulsory DNA testing under Proposition 69 under the circumstances alleged in their complaint. On this basis, defendants contend that plaintiffs lack standing in this as-applied challenge and that their case is unripe. They contend that plaintiffs' complaint is based on the "mistaken assumption that Proposition 69 is completely retroactive" and will require DNA testing of persons in the Arrestee Class and Formerly Convicted Persons Class. Defendants argue that Proposition 69 is not, in fact, retroactive in the

3

manner alleged by plaintiffs based on both a common-sense interpretation of the statute and on the guidance to law enforcement officials contained in the Bulletin. The parties appear to agree that if the Bulletin were followed by law enforcement officials, members of the Arrestee Class and Formerly Convicted Persons Class would not be subject to compulsory DNA testing under Proposition 69.

Plaintiffs, however, argue that the Bulletin is not binding on the Attorney General and other law enforcement officials. Plaintiffs contend that Proposition 69 plainly states that any person who has been convicted of or pled guilty or no contest to a felony offense, as well as any person who has been arrested for certain specified offenses, is immediately subject to DNA testing, CPC § 296(a)(1), and commencing January 1, 2009, "any adult person arrested of charged with any felony offense" will be subject to DNA testing. CPC § 296(a)(2)(C). Plaintiffs emphasize that Proposition 69 includes a section on "retroactive application," stating that the new testing requirements "shall have retroactive application," and that testing shall occur "regardless of when the crime charged or committed became a qualifying offense, and regardless of when the person was convicted of the qualifying offense . . . " CPC § 296.1(b)(1). Based on what they view as the plain language of Proposition 69, plaintiffs argue that they are currently subject to DNA sampling or will be so subject on January 1, 2009. They argue that a draft non-binding guidance document issued by the Attorney General does not ensure that the statute will not be enforced against them or other similarly situated persons.

The "irreducible constitutional minimum" of Article III standing includes three elements: (1) a plaintiff must have suffered an "injury-in-fact" to a legally protected interest, and the injury must be both "concrete and particularized" and "actual or imminent," as opposed to "conjectural or hypothetical," (2) there must be a causal connection between the injury and the challenged statute, and (3) it must be likely that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Ripeness is a justiciability doctrine designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete

4

way by the challenging parties." *Nat'l Park Hospitality Ass'n v. DOI*, 538 U.S. 803, 808 (2003), citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967).

As explained by the Ninth Circuit in *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134 (9th Cir. 2000) (en banc), there is significant overlap between standing and ripeness such that "[s]orting out where standing ends and ripeness begins is not an easy task."  Like this case, *Thomas* involved a pre-enforcement challenge to a statute.  In *Thomas*, the plaintiff landlords mounted an as-applied First Amendment challenge to the Alaska housing laws that prohibited discrimination on the basis of marital status.  The plaintiffs claimed that their free exercise of religion and free speech rights were abridged by the law's prohibitions against allowing landlords to refuse to rent on the basis of marital status, to ask prospective tenants about their marital status, or to advertise a preference based on marital status.  The *Thomas* court held that the plaintiffs' pre-enforcement challenge was not ripe for adjudication.

In *Thomas*, as in the instant case, whether the question is viewed as one of standing or ripeness, the analysis is the same.  *Id.* at 1139.  For both, "the Constitution mandates that prior to our exercise of jurisdiction there exist a constitutional "case or controversy," that the issues presented are "definite and concrete, not hypothetical or abstract." *Thomas* at 1139, *citing Railway Mail Ass'n v. Corsi*, 326 U.S. 88, 93 (1945).  In assuring that this jurisdictional prerequisite is satisfied,  a court considers whether the plaintiffs face "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement," *Thomas* at 1139, *citing Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979), or whether the alleged injury is too "imaginary" or "speculative" to support jurisdiction.  *Thomas* at 1139.  The Ninth Circuit has repeatedly held that neither the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the "case or controversy" requirement. *See, e.g.*, *Thomas* at 1139; *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126-27 (9th Cir. 1996); *Stoianoff v. Montana*, 695 F.2d 1214, 1223 (9th Cir. 1983).

The *Thomas* court set out a framework to analyze whether a constitutional challenge to a state statute before its enforcement was ripe for review.  The Ninth Circuit explained that the ripeness inquiry focuses on two different components: a constitutional component and a prudential component.  *Id.* at 1138.  The constitutional component of the inquiry focuses on three factors: (1)

5

whether the plaintiffs have articulated a "concrete plan" to violate the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute. *Id.* at 1139. Analysis of the prudential component of ripeness is guided by two considerations: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Thomas*, 220 F.3d at 1141, *citing Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967).

The parties agree that plaintiffs may be considered to have met the first prong of the *Thomas* test because they have already engaged in the conduct that makes them subject to DNA testing under Proposition 69. The second and third prongs of the *Thomas* inquiry, however, show that the plaintiffs' claimed injury - their fear that they will be subject to DNA testing - fails the constitutional component of the ripeness inquiry.

With respect to the second prong, the Court observes that prosecuting authorities have not communicated any specific warnings or threats to initiate DNA testing against plaintiffs. Plaintiffs have not cited any examples in which law enforcement officials have applied or threatened to apply Proposition 69 to plaintiffs or similarly situated persons. Plaintiffs contend, however, that this case is different from cases such as *Thomas* in which law enforcement officials have discretion to prosecute. Plaintiffs contend that DNA testing under Proposition 69 is a mandatory administrative duty, and thus that the "second *Thomas* prong is automatically satisfied." Opp'n at 14.

Plaintiffs' argument, however, is unavailing. First, it is significant that the Attorney General has articulated a formal policy in the form of an Information Bulletin that states that Proposition 69 does not subject people that are members of the plaintiffs' Arrestee Class and Formerly Convicted Persons Class to DNA testing. In contrast to suggesting an imminent warning or threat of the DNA testing of plaintiffs, the Attorney General's Bulletin officially disavows that Proposition 69 will be enforced against persons similarly situated to plaintiffs. The Bulletin is specifically directed to "California Law Enforcement Agencies and Personnel," and it has been widely distributed to California law enforcement authorities and published on the Attorney General's website. Issued by the "chief law officer of California," the Bulletin can be reasonably expected to establish uniform state policy for the implementation of Proposition 69. California Constitution, Article V, Section 13.

6

It thus constitutes a formal policy that distinguishes this case from those that plaintiffs cite in their support. See *Adult Video Association v. Barr*, 960 F.2d 781, 785 (9th Cir. 1992) (there was no "formal policy" that prohibited the enforcement activity feared by plaintiffs); *Virginia v. American Booksellers Association, Inc.*, 484 U.S. 383, 393 (1988) (stating that the "State has not suggested that the newly enacted law will not be enforced, and we see no reason to assume otherwise."); *Virginia Society for Human Life v. FEC*, 263 F.3d 379, 388 (4th Cir. 2001) (the FEC's policy of nonenforcement was not sufficiently formal where it was adopted in a closed meeting and recorded in FEC minutes); *United States v. Wunsch*, 84 F.3d 1110 (9th Cir., 1996) (finding that an enforcement policy adopted by the California State Bar Association was a mere enforcement strategy which would not be binding on the courts.)

Second, the Court observes that even under plaintiffs' interpretation of Proposition 69, only one of the plaintiffs, Delucci-Youngberg, is presently subject to DNA testing. The others would not be tested under the new law until, at the earliest, January 1, 2009. While plaintiff contends that the factual record subjecting plaintiffs to DNA testing is complete, the Court observes that the state's interpretation and enforcement of Proposition 69 will become much clearer as January 2009 nears. With this information, a court will be better able to evaluate whether plaintiffs have a reasonable fear of DNA testing under Proposition 69. As stated by the Supreme Court, "there are situations where, even though an allegedly injurious event is certain to occur, the Court may delay resolution of constitutional questions until a time closer to the actual occurrence of a disputed event." *Blanchette v. Connecticut General Insurance Corp.* (*Regional Rail Reorganization Act Cases*), 419 U.S. 102, 143-44 (1974). Here, the allegedly injurious event is not certain to occur, but even if it were, the case would not necessarily be ripe.

The claim of Delucci-Youngberg is different in that she was arrested for murder in the past and thus, under plaintiffs' interpretation of Proposition 69, could be presently subject to DNA testing. The Court observes, however, that even Delucci-Youngberg has not received a specific warning or threat of DNA testing. Such testing, moreover, would have no reasonable purpose given that she would be immediately eligible to have her DNA profile expunged under Section 299 of Proposition 69 because she was acquitted of the murder charge. Section 299(a) states that "[a]

7

person whose DNA profile has been included in the data bank pursuant to this chapter shall have his or her DNA specimen destroyed and searchable database profile expunged from the data bank program . . . if the person has no past or present offense or pending charge...." For these reasons, Delucci-Youngberg fails to allege "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Thomas* at 1139.

The third prong of the *Thomas* test looks to the history of enforcement under the challenged statute. In the instant case, there is no history of past enforcement of Proposition 69 against plaintiffs or other similarly situated persons. In *Thomas*, the Ninth Circuit found that this prong supported dismissal for lack of ripeness even though there was evidence of recent enforcement including two challenges to the statute's enforcement that had reached the Alaska Supreme Court. Here, the fact that Proposition 69 is newly enacted and that there is no history of past enforcement weighs heavily in favor of finding this case unripe for adjudication.

Plaintiffs contend that the enforcement policy of the state could change or that local officials might choose to disregard the Attorney General's Bulletin. When and if either of these possible events occur, the ripeness inquiry might lead to a different answer. At present, the lack of a history of enforcement and the lack of a specific warning or threat that Proposition 69 will be enforced the manner feared by plaintiffs require dismissal of plaintiffs' challenge as constitutionally unripe. Because this action does not currently meet the Article III requirements for ripeness, the Court need not consider the prudential component of the ripeness doctrine.

## IV. CONCLUSION

For the foregoing reasons, this action is not ripe for judicial review. Defendants' motion to dismiss is GRANTED.

IT IS SO ORDERED.

Dated: April 22, 2005                                                    /s/
                                                              _____
                                                              FERN M. SMITH
                                                              UNITED STATES DISTRICT JUDGE